THE TOWNSHIP OF NORTH BERGEN IN THE COUNTY OF HUDSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF, v. THE HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION; THE BOROUGH OF CARLSTADT IN THE COUNTY OF BERGEN; THE BOROUGH OF EAST RUTHERFORD IN THE COUNTY OF BERGEN; THE BOROUGH OF LITTLE FERRY IN THE COUNTY OF BERGEN; THE BOROUGH OF MOONACHIE IN THE COUNTY OF BERGEN; THE BOROUGH OF NORTH ARLINGTON IN THE COUNTY OF BERGEN; THE BOROUGH OF RIDGEFIELD IN THE COUNTY OF BERGEN; THE BOROUGH OF RUTHERFORD IN THE COUNTY OF BERGEN; THE TOWNSHIP OF SOUTH HACKENSACK IN THE COUNTY OF BERGEN; THE BOROUGH OF TETERBORO IN THE COUNTY OF BERGEN; THE CITY OF JERSEY CITY IN THE COUNTY OF HUDSON; THE TOWN OF KEARNY IN THE COUNTY OF HUDSON AND THE TOWN OF SECAUCUS IN THE COUNTY OF HUDSON, DEFENDANTS-RESPONDENTS, AND THE TOWNSHIP OF LYNDHURST IN THE COUNTY OF BERGEN, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 26, 1985—Decided April 25, 1985.

Before Judges PRESSLER, BRODY and COHEN.

*George O. Savino* argued the cause for appellant.

*Bertram P. Goltz, Jr.,* Deputy Attorney General, argued the cause for respondent Hackensack Meadowlands Development Commission (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Bertram P. Goltz, Jr.* on the brief).

*James A. Farber* argued the cause for respondents Borough of Little Ferry, Borough of Moonachie and Township of South Hackensack (*DeCottis, Johnson & Pinto,* attorneys; *Jonathan N. Harris* on the letter brief).

*James J. Dooley* argued the cause for respondent Borough of Teterboro (*Winne, Dooley & Boyle,* attorneys; *James J. Dooley* on the letter brief).

*Norman A. Doyle, Jr.* argued the cause for respondent Town of Kearny.

*Lewis M. Holland* argued the cause for respondent Town of Secaucus (*Holland & Holland,* attorneys; *Lewis M. Holland* on the brief).

*Alfred A. Porro, Jr.,* attorney for respondents Borough of East Rutherford and Borough of Ridgefield.

*Edwin C. Eastwood, Jr.,* attorney for respondent Borough of North Arlington (*Peter A. Scandariato* on the letter brief).

*M. Harry Muser,* attorney for respondent Borough of Rutherford (*E. Michael Donovan* on the letter brief).

No brief was filed on behalf of respondents Borough of Carlstadt and City of Jersey City.

The opinion of the court was delivered by

BRODY, J.A.D.

█ The Hackensack Meadowlands Reclamation and Development Act, *N.J.S.A.* 13:17–1 *et seq.,* has as one of its features the establishment of an "intermunicipal account" to adjust among the constituent municipalities the losses and benefits accruing from the development of the Hackensack Meadowlands District. *N.J.S.A.* 13:17–61(b). Each year a municipality either pays into the account or is paid out of it depending generally on whether its tax rate when applied to the true value of its lands within the District in the comparison year would produce more or less tax revenue than would have been produced by those lands as valued in 1970, the base year. *N.J.S.A.* 13:17–67(a) and –68. An increase in school population also entitles a municipality to draw from the account. *N.J.S.A.* 13:17–70. Surplus funds in the account are annually distributed to the municipalities in proportion to the area of land each has in the District compared to the total area of the District. *N.J.S.A.* 13:17–72(a). *Meadowlands Reg. Redevelopment Agency v. State,* 63 *N.J.* 35 (1973), sustained the constitutionality of the scheme against an attack that it was arbitrary.

The Township of Lyndhurst, which was a party to *Meadowlands*, now asserts that the scheme is unconstitutional on a ground not expressly discussed by the Court in *Meadowlands*. It claims standing under the reservation in *Meadowlands* that "should a constituent municipality demonstrate that the tax-sharing provisions as actually applied to it work an arbitrary result, it will have the right to secure judicial relief." *Id.* at 45. Some of the municipalities support Lyndhurst's position while others support the statutory scheme.

The particular feature of the tax-sharing plan under attack provides that the true value of the lands in the comparison year shall be the aggregate assessed value of those lands "as the same may be modified by the county board of taxation upon appeal...." *N.J.S.A.* 13:17-67(a)(3). Lyndhurst argues that by not accounting for assessment modifications in the tax court, the statute fails to make timely adjustments for reductions in the aggregate assessed value thereby causing Lyndhurst to pay more than its fair share into the account. The trial judge entered summary judgment against Lyndhurst and we now affirm.

*Meadowlands* expressly held that the two-year spread between the comparison year and the adjustment year is neither too long nor too short. *Id.* at 44. The Court also recognized that to avoid a longer and therefore less desirable spread, *N.J.S.A.* 13:17-74(a) requires that certification of the adjustment payment be made on February 1 following the comparison year. *Ibid.* That date falls soon after the statutory deadlines for establishing the data on which the adjustment payment is based. One of these deadlines is the November 15 date by which the county board must determine all tax appeals. *N.J.S.A.* 54:3-21 and -26. The taxpayer may seek a review in the tax court by filing a complaint within 45 days after service of the county board judgment. *R.* 8:4-1(a)(2). Obviously, a review in the tax court could not be completed before the February 1 date for certifying the adjustment payment. Therefore,

that certification cannot take into account tax court modifications.

A taxpayer owning property assessed at more than $750,000 may appeal directly to the tax court, bypassing the county board. *N.J.S.A.* 54:3–21. Those appeals may not be heard before April 1 of the following year, two months after the February 1 certification date. *N.J.S.A.* 54:51A–2. Thus the only modification of an assessment that can be determined in time for the February 1 certification is a modification by the county board. By holding that the February 1 certification date is not arbitrary, the Court in *Meadowlands* in effect held that it is not arbitrary to limit adjustments for assessment modifications to those made by the county board.

Although Lyndhurst casts its argument in terms of "arbitrariness" in order to establish standing, its real objection, as we understand it, is that by not taking into account an assessment reduction entered in the tax court, the tax-sharing plan is discriminatory because Lyndhurst pays more than its fair share into the intermunicipal account until the comparison year in which the reduction is first shown on the assessment rolls.

A municipality ordinarily does not have standing to raise equal protection arguments against the State. *McKenney v. Byrne*, 82 *N.J.* 304, 315 n. 4 (1980); *Booth v. Township of Winslow*, 193 *N.J.Super.* 637, 639 (App.Div.1984).

Even if Lyndhurst has standing, it failed to support its point with any evidence. All that Lyndhurst presented to the court below are data showing that its 1981 aggregate assessed value of $146,327,000 was later reduced to $139,322,000 in the tax court, resulting in what it considers to be an "overpayment" of $13,100 into the intermunicipal account in 1983.[1] There is no evidence that Lyndhurst's situation is any different from that of the other constituent municipalities. If all "overpaid" in like proportion, then none can complain of discrimination.

---

[1] None of the 42 eligible taxpayers appealed directly to the tax court.

Even if Lyndhurst's overpayment was disproportionate, considerable deviation is constitutionally tolerable before a claim of discrimination will be sustained. For instance, were Lyndhurst claiming that its municipal assessor imposed a discriminatory assessment, it would have to prove that the deviation from true value "exceeds the upper limit or falls below the lower limit of the common level range." *N.J.S.A.* 54:51A–6(a). The common level range is "plus or minus 15% of the average ratio" of assessed to true value in the taxing district. *N.J.S.A.* 54:1–35a. *See Murnick v. Asbury Park*, 95 *N.J.* 452 (1984).

Finally, we note that two factors tend to moderate any disparity between an overpayment into the intermunicipal account by one constituent municipality compared with the payments made by the others. First, because payments are not based on an assessment levied to raise a predetermined total sum, an overpayment by one does not *ipso facto* produce underpayments by the others. Second, widespread overpayments would likely produce surplus funds which, as previously noted, must be returned to the constituent municipalities on an acreage basis that *Meadowlands* held is not arbitrary on its face. 63 *N.J.* at 44.

Affirmed.